IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KATHRYN H. MARTIN,                §
                                  §
                    Plaintiff,    §
                                  §  Civil Action No. 3:03-CV-2209-D
VS.                               §
                                  §
EL NELL INC., d/b/a WESTWOOD      §
COLLEGE OF TECHNOLOGY,            §
                                  §
                    Defendant.    §

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Kathryn H. Martin
("Martin") sues defendant El Nell Inc., d/b/a Westwood College of
Technology ("Westwood"), alleging that Westwood terminated her
employment based on her Caucasian race, in violation of the Texas
Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann.
§§ 21.001-21.556 (Vernon 1996 & Supp. 2004-05), and that it
breached its employment contract with her when it discharged her.
Westwood moves for summary judgment and requests an award of
attorney's fees.  The court concludes that Westwood is entitled to
summary judgment but not to attorney's fees, and it dismisses this
action by judgment filed today.

I

Westwood employed Martin as a math instructor at its Dallas
campus from 2002 until 2003, when it terminated her following an
incident involving a statement she made in the presence of an

African-American employee and student.[1]  While in the office of
Althea Parker ("Parker"), Westwood's Registrar, and in the presence
of Lavon Thompson ("Thompson"), a Westwood student, Martin picked
up a videotape on Parker's desk, looked at it, and stated, "[t]his
is a movie with black people in it." D. App. 116.  Martin did not
make the statement in a derogatory, disgusted, or disrespectful
tone of voice, but rather did so as she would a statement of fact.
After she made the statement, Martin tossed the videotape onto
Parker's desk.   She then asked Parker if she could see the
videotape again, and Parker told her she could not.    Martin
departed Parker's office and proceeded to class.

    Later that day, Parker informed Martin that she did not like
her comment.   Parker also told her that Thompson was upset,  and
she explained that she was particularly concerned about Thompson's
feelings.   Parker informed Martin that she intended to report the
incident to Rose Galloway ("Galloway"), Westwood's Director of
Education, who is  Hispanic.   Martin responded that she was sorry
that what she had said had bothered Parker, and she offered a
similar apology to Thompson.

---

[1] The court recounts the evidence favorably to Martin as the
summary judgment nonmovant and draws all reasonable inferences in
her favor.  *See, e.g., Clift v. Clift*, 210 F.3d 268, 270 (5th Cir.
2000).   Westwood's version of the incident is somewhat different.
Westwood relies on verbal and non-verbal aspects that would suggest
a racial animus on Martin's part, and it maintains that Martin had
engaged  in  problematic  workplace  behavior,  including  racially
insensitive  conduct,  before  this  incident.   The  court  need  not
consider this evidence, however, to decide Westwood's motion.

The day after the incident, Parker reported it to Galloway, who later spoke with Martin. Galloway recounted what she had understood had happened, and she asked Martin to share her side of the story. Martin admitted making the statement and tossing the videotape onto Parker's desk. She told Galloway that she did not intend the statement to be unkind and that she had no motivation for making the statement or tossing the videotape on the desk. Galloway informed Martin that she was being fired and that Westwood would not tolerate racially insensitive and offensive statements directed toward students and colleagues. Galloway terminated Martin on the grounds that she had violated Westwood's policies and engaged in gross misconduct.

II

Westwood moves for summary judgment as to Martin's race discrimination claim based on the TCHRA. Under the TCHRA, "[a]n employer commits an unlawful employment practice if because of race . . . the employer . . . discharges an individual[.]" Tex. Lab. Code Ann. § 21.051 (Vernon 1996). Texas courts construe the TCHRA consistently with federal law interpreting Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical."); *Caballero v. Cent. Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993) ("Another stated purpose [of the TCHRA]

- 3 -

is to coordinate and conform with federal law under Title VII of the Civil Rights Act of 1964, as amended." (internal citations omitted)).[2]

To survive a motion for summary judgment under the TCHRA, "a plaintiff must present sufficient evidence to create a fact issue regarding race discrimination, either through direct or circumstantial evidence." *Lyons v. Burlington Coat Factory Warehouse Corp.*, 2004 WL 515585, at *4 (N.D. Tex. Jan. 30, 2004) (Kinkeade, J.). A plaintiff who offers "sufficient direct evidence of intentional discrimination should prevail, just as in any other case where a plaintiff meets [her] burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 n.6 (5th Cir. 1994)). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir.1995)). Such evidence of discrimination, however, is rare. *See, e.g., Rutherford v. Harris County, Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (Fitzwater, J.) (stating that

---

[2]In her summary judgment response, Martin states as one disputed issue of law whether Westwood violated Title VII by terminating her employment. *See* P. Resp. at 2. The court assumes that this is either a typographical error or Martin's recognition that her TCHRA claim is governed by principles of Title VII jurisprudence.

because direct evidence is rare in discrimination case, plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion).

If direct evidence is unavailable, the plaintiff may create an inference of discrimination by using the *McDonnell Douglas* burden-shifting framework. *See, e.g., Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). *McDonnell Douglas* applies to TCHRA discrimination claims at the summary judgment stage. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005). Because Martin does not point the court to direct evidence of discrimination, the court will apply the *McDonnell Douglas* burden-shifting paradigm, although Martin contends that all or part of *McDonnell Douglas* has been replaced by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). She maintains that *Desert Palace* makes it more difficult for defendants to obtain summary judgment. Martin spends much of her brief urging the court to reject the application of the *McDonnell Douglas* framework to her case, apparently asking that it apply the mixed-motive framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion), because it is "a much simpler approach." P. Resp. at 16. Instead, the court will follow *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) (age discrimination case).[3]   After the Supreme

---

[3]Martin criticizes *Rachid*'s conclusion that *Desert Palace* applies to only the third stage of the *McDonnell Douglas* framework, contending it "makes it unnecessar[il]y complex." P. Resp. at 16.

Court decided *Desert Palace*, *Rachid* merged the *McDonnell Douglas* and *Price Waterhouse* approaches into a single, integrated formulation called the "modified *McDonnell Douglas* approach." *Id.* at 312.[4]

As modified, *McDonnell Douglas* consists of three stages. First, Martin must establish a prima facie case of discrimination, which, if shown, raises an inference of unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). The burden then shifts to Westwood to articulate a legitimate, nondiscriminatory reason for discharging her. *See id.* at 506-07. Westwood's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384-85 (5th Cir. 2003) (Fitzwater, J.) (age discrimination case). Finally, if Westwood meets its production burden, then Martin may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative, Martin must "offer sufficient evidence to create a genuine issue of material fact . . . that [Westwood's] reason is not true, but is instead a pretext

---

[4]*Rachid* is an age discrimination case brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, in which the panel concluded that mixed-motives principles drawn from *Desert Palace*, a Title VII case, applied to the ADEA. *See Rachid*, 376 F.3d at 310-12. As noted, Title VII principles apply to this lawsuit brought under the TCHRA. *See Shackelford*, 190 F.3d at 404 n.2 ("[T]he law governing claims under the TCHRA and Title VII is identical"). It therefore follows that the analysis of *Rachid* should be applied as well to a TCHRA claim.

for discrimination." *Id.* (internal quotations omitted).  Under the
mixed-motives alternative, Martin must offer sufficient evidence to
create a genuine issue of material fact "that [Westwood's] reason,
while true, is only one of the reasons for its conduct, and another
motivating factor is [Martin's] protected characteristic[.]" *Id.*
(internal quotations omitted).

III

The court will now apply the modified *McDonnell Douglas*
framework to Martin's claim.

A

> To establish a prima facie case of employment
> discrimination [Martin] must establish that
> [she] (1) is a member of a protected class;
> (2) was qualified for the position; (3) was
> subject to an adverse employment action; and
> (4) was replaced by someone outside the
> protected class, or, in the case of disparate
> treatment, shows that other similarly situated
> employees were treated more favorably.

*Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)
(addressing 42 U.S.C. § 1981 claim) (citing *Okoye v. Univ. of Tex.
Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).  Only
the fourth element of the prima facie case is contested here.
Although Martin was replaced by a Caucasian, she contends she was
treated differently from non-Caucasians because, had an African-
American employee made the same remark——"[t]his is a movie with
black people in it."——the statement would not have been considered
racially offensive, no complaint would have been filed, and the

- 7 -

African-American employee would not have been terminated.  Although
Martin has produced no evidence to support this allegation, the
court will assume *arguendo* that she can satisfy this element and
establish her prima facie case, because its analysis of her claim
largely collapses consideration of the fourth element into an
assessment of whether she can demonstrate pretext or that a
discriminatory reason was also a motivating factor.

                                        B

     Assuming *arguendo* that Martin has satisfied her prima facie
obligation, the burden of production then shifts to Westwood to
produce evidence that it terminated Martin for a legitimate,
nondiscriminatory reason.   Westwood's proffered reason for
discharging her is that she violated Westwood's policies and
engaged in gross misconduct in connection with her offensive
behavior toward Parker and Thompson.

     Martin argues that Westwood's proffered reason is
discriminatory.  She contends that Westwood discriminated against
her on the basis of her race when it concluded that her remark
toward Parker and Thompson was offensive, reasoning that "only a
non-African-American could possibly be deemed to have made a
racially offensive remark as a result of making this statement."
P. Br. at 3.  When asked during her deposition to recite the facts
that support her belief that she was the subject of racial
discrimination, Martin stated: "I *feel* that had a black person said

- 8 -

the statement that I said, not only would . . . that person not have been fired, but that no one would have even mentioned it to Mrs. Galloway." D. App. 144 (emphasis added). Similarly, responding to an interrogatory that asked her to identify statements or actions that people at Westwood had taken that support her allegation of racial discrimination, Martin answered:

> The statement, "That's a movie with black people in it," is a statement of fact. There is nothing inappropriate about it. If a black person had made this statement, it would not have been considered inappropriate. It probably would not have been reported to Mrs. Galloway, resulting in the termination of said black person.

D. App. 210.

The answer Martin gave in her deposition amounts to nothing more than how she described it——a feeling——and her interrogatory response is conclusory. Martin's belief that Westwood took her race into account when it determined that her remarks were offensive is speculative and lacks evidentiary support. Nevertheless, even drawing all inferences in Martin's favor with respect to her unsubstantiated feeling or beliefs, her argument lacks merit.

Martin's statement, "[t]his is a movie with black people in it," is patently a statement about race, because it refers to the race of at least some of the persons in the movie. Not all statements about race, of course, are offensive. But society today does consider offensive certain statements about the hearer's race

- 9 -

when the person who makes the statement is of a different race. This is so even though the same statement might not be considered offensive if the speaker and the hearer were of the same race.  For example, given this country's history of racial discrimination and bigotry toward African-Americans, it is not unusual for a statement about African-Americans to be received differently, depending on whether the speaker is African-American or Caucasian.  And despite the absence of a history of discrimination against Caucasians, the same can also be said of a racial statement made by an African-American about a Caucasian.

Martin's reasoning, if accepted, would deprive an employer of the ability to determine whether a statement made in the workplace is offensive or unacceptable based on the conclusion that it is objectionable precisely because of the race of the person who made it and the race of the person who heard it.  She impliedly argues that, when determining whether a statement about race is offensive, an employer cannot examine the entire context in which the statement was made, if that includes considering the respective races of the speaker and the hearer.  One can earnestly hope that this country will reach the point where a person's race is never relevant, all barriers between different races are eliminated, and all racial discrimination is eradicated.  But until then, consideration of the race of a speaker is simply one factor that can be used in evaluating whether a racial remark is in fact

offensive to the hearer.   An employer's application in the workplace of this mode of assessing whether a statement is offensive is not itself a discriminatory act based on the speaker's race.

Westwood decided that Martin's statement was racially offensive, in violation of Westwood's policies.   It has therefore met its burden of producing a legitimate, nondiscriminatory reason for discharging her. *See Pickens v. Shell Tech. Ventures Inc.*, 118 Fed. Appx. 842, 846 (5th Cir. 2004) ("For the purposes of Title VII, this reasonable belief is enough to justify Pickens's termination."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993) (reasoning that discrimination is not shown if employer believed complaining employee's allegation in good faith and discharged offending employee based on that belief); *accord Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir. 1986); *Dickerson v. Metro. Dade County*, 659 F.2d 574, 581 (5th Cir. Unit B Oct. 1981); *Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980).   Westwood did not discharge Martin because of her race; it did so because it determined that she had made a racially insensitive and offensive remark, in violation of its policies.   Even if Martin produced evidence to support her belief that Westwood considered, among other factors, the fact that she is Caucasian and that Parker and Thompson are not, this would not render Westwood's reason for terminating Martin discriminatory.

C

Because Westwood has satisfied its burden to produce a legitimate, nondiscriminatory reason for Martin's termination, the presumption of discrimination raised by the prima facie case is negated. *See St. Mary's Honor Ctr.*, 509 U.S. at 510-11. Summary judgment for Westwood is thus appropriate unless Martin can produce evidence to show either that Westwood's reason was pretextual or that a discriminatory reason was also a motivating factor. *See Rachid*, 376 F.3d at 312.

Martin can show that Westwood's reason was pretextual by either of two ways. First, she can produce sufficient evidence for the trier of fact to find that Westwood's "proffered explanation is unworthy of credence." *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Or she may introduce sufficient evidence for the trier of fact to find that a discriminatory reason more likely motivated Westwood's decision to terminate her. *See id.*

Martin has produced no evidence to show that Westwood's proffered reason for terminating her is untrue. She has also produced no proof to support the finding that a discriminatory reason was the more likely reason for her termination. Had Martin produced evidence, for example, that African-American employees were treated more leniently for making similar racial statements about Caucasians to Caucasians, this might have been sufficient to

meet her burden at the pretext stage.[5]  But Martin offers nothing more than her own subjective belief, which is insufficient.  *See Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment.") (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)); *Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam) ("[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.") (second alteration in original); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) ("[B]ald assertions of . . . discrimination are inadequate to permit a finding that proscribed discrimination motivated [the defendant's] actions against [the plaintiff].").

Martin has also produced no evidence that, in addition to Westwood's proffered reason, it had a discriminatory motive.  She contends only that Westwood's proffered nondiscriminatory reason is actually the discriminatory motive.  For the reasons explained *supra* at § III(B), the court rejects this argument.

Without any evidence to support pretext or mixed motive, Martin has failed to meet her burden at the third stage of the

---

[5]Such evidence would be an example of circumstantial evidence, which is sufficient under *Desert Palace*.  But one's subjective belief does not alone rise to the level of circumstantial evidence; it is not evidence at all.

modified *McDonnell Douglas* framework.   Accordingly, the court grants Westwood summary judgment dismissing Martin's race discrimination claim under the TCHRA.

In reaching this result, the court suggests no view concerning whether an institution of higher learning should discipline a professor for speech with which it disagrees or that, if censored, would impinge on the professor's academic freedom.   The conduct at issue here did not occur in the classroom or in another pedagogical or advocatory forum.   Moreover, the courts do not superintend employment decisions that are merely mistaken or even ill-advised; they remedy those that violate the law.   *See, e.g., Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) ("[W]e do not sit as a super-personnel department that reexamines an entity's business decisions.").

                              IV

Westwood argues that it is entitled to attorney's fees under Tex. Lab. Code Ann. § 21.259(a) (Vernon 1996), which provides that "[i]n a proceeding under this chapter, a court may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."   It maintains that the court should make an award because Martin "has clearly brought a patently frivolous claim," in support of which she could not even establish a prima facie case.   D. Br. at 24.   The court declines in its discretion to award attorney's fees.

                            - 14 -

A

"[A]n employer may recover attorney fees if the plaintiff's claims 'were frivolous, meritless, or unreasonable, or the plaintiff continued to litigate after it became clear that [her] claim was frivolous.'" *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 580 (Tex. App. 2004, no pet.) (quoting *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 144-45 (Tex. App. 2000, pet. denied)).   Texas courts have looked to federal precedent when deciding whether to award fees to a prevailing defendant in an employment discrimination case.   *See, e.g., Elgaghil*, 45 S.W.3d at 144 ("Although we find no state cases construing the application of this section to a prevailing *defendant* in an employment discrimination case, the Fifth Circuit has interpreted this statute by applying the federal standard for Title VII cases.").   The *Elgaghil* court applied the standard of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), stating that "[u]nder *Christiansburg*, a district court has discretion to award attorney's fees to a prevailing employer in an employment discrimination case, provided the plaintiff's claims were frivolous, meritless, or unreasonable, or the plaintiff continued to litigate after it became clear that his claim was frivolous."   *Id.* at 144-45 (citing *Christiansburg*, 434 U.S. at 421-22).   *Christiansburg* provides that the court may award attorney's fees to a prevailing defendant, in its discretion, if it determines that the plaintiff's action was "frivolous,

unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg*, 434 U.S. at 421. *Elgaghil* holds that "attorney's fees are not appropriate simply because the plaintiff loses his case. Rather, to show that a lawsuit was without merit, the defendant must establish that the case was groundless or without foundation." *Elgaghil*, 45 S.W.3d at 145 (citations omitted).

B

The mere fact that Martin was unable to survive Westwood's summary judgment motion does not warrant an award of fees. *See Gordon v. Hercules, Inc.*, 715 F. Supp. 1033, 1033-34 (D. Kan. 1989) (holding that plaintiffs' failure to establish prima facie case in Title VII case did not entitle prevailing defendant to attorney's fees). And this court has long emphasized that it should proceed with care when assessing whether to impose sanctions on an unsuccessful race discrimination claimant:

> Claims alleging racial discrimination are clearly subject to sanction where they fall below the levels of acceptability prescribed by applicable law. It must nevertheless be remembered that statutes aimed at eradicating racial discrimination and providing a private right of action for its victims serve the vital function of ameliorating one of this Nation's most pernicious and intractable problems: making decisions about persons on the basis of their race. The salutary purposes for these laws strongly suggest that disincentives to their invocation should be erected only with care.
> This proposition finds greater force in the context of present-day racial

> discrimination.  Unlike the former days of *de
> jure* suppression and segregation——and in the
> face   of   "society's   consensus   that
> discrimination based on the color of one's
> skin   is   a   profound   wrong   of   tragic
> dimension"——racial    prejudice    and
> discrimination   have   become   insidious,
> manifested, if at all, by subtle slight rather
> than by conspicuous callousness.   As Judge
> Johnson   recently   wrote   in   an   analogous
> context,  "[d]efendants  are  rarely  courteous
> enough to admit in some documented form that
> an asserted rationale behind a discharge is
> really a pretext for an illicit motive."  Thus
> before determining that a race discrimination
> claim   is   sufficiently   baseless,   or   the
> prefiling inquiry of counsel or his client so
> lacking,   as   to   warrant   the   imposition   of
> sanctions, judges should appropriately account
> for the nature of the claim.

*Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1118 (N.D.

Tex. 1990) (Fitzwater, J.) (citations and footnotes omitted)

(addressing sanction request under Fed. R. Civ. P. 11 and 28 U.S.C.

§ 1927).  Having assessed the viability of Martin's lawsuit *in

toto*, and with due regard for the nature of the claim presented,

the court finds that her suit is not sufficiently groundless or

without foundation to justify an award of attorney's fees, and it

denies Westwood's request.

V

Westwood also moves for summary judgment dismissing Martin's

breach of contract claim.

A

Martin appears to allege in her first amended complaint that

Westwood's Faculty Code of Conduct ("Code of Conduct") constituted

- 17 -

an employment contract between her and Westwood.  She maintains that this "contract" provided that, as a condition of her employment, she was entitled to the free inquiry and exchange of ideas and the enjoyment of constitutionally-protected freedom of expression.  She alleges that Westwood breached the contract by discharging her for exercising these rights.  Martin's allegations change slightly in her response to Westwood's motion, wherein she appears to aver that her offer letter is actually her contract and that the Code of Conduct is incorporated into it by reference.  She specifies that Westwood breached its contract with her by firing her for freely expressing a statement of fact about a video.

B

"[E]mployment is presumed to be at-will in Texas." *Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam).  Consequently, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).  "'To rebut the presumption of employment at will, an employment contract must directly limit in a meaningful and special way the employer's right to terminate the employee without cause.'"  *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000) (per curiam) (quoting *Rios v. Tex. Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex. App. 1996,

writ denied) (internal quotation marks omitted)).  For a binding employment contract to exist, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Montgomery County Hosp. Dist.*, 965 S.W.2d at 502.  "[A]ny modification of the at-will status must be based on express agreements rather than implied agreements," and the agreement "must be clear and explicit." *Cote v. Rivera*, 894 S.W.2d 536, 540 (Tex. App. 1995, no writ); *see also Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 803 (Tex. App. 2003, no pet.) ("A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at will has the burden of proving an express agreement or written representation to that effect."); *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 703 (Tex. App. 1998, pet. denied) ("[T]o be enforceable, an agreement to modify the employment at-will relationship must be (1) express rather than implied, and (2) clear and specific."); *Byars v. City of Austin*, 910 S.W.2d 520, 523 (Tex. App. 1995, writ denied).  "An employee who has no formal agreement with [her] employer cannot construct one out of indefinite comments, encouragements, or assurances." *Montgomery County Hosp. Dist.*, 965 S.W.2d at 502.

C

Westwood argues that Martin cannot show that the Code of Conduct manifests a specific and definite intent to be bound not to

terminate Martin except under clearly specified circumstances.  The court agrees.

The Code of Conduct itself makes it clear that it is a policy that applies to Westwood faculty members.  "Texas courts have recognized that employment policies may, in limited circumstances, alter the at-will nature of the employment and create enforceable contractual rights." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 862 (5th Cir. 1999) (citing *Vida v. El Paso Employees' Fed. Credit Union*, 885 S.W.2d 177 (Tex. App. 1994, no writ)).  To do so, however, "the policy must specifically and expressly limit the employer's ability to terminate the employee" and "must contain an explicit contractual term altering the at-will relationship, and must alter that relationship 'in a meaningful and special way.'" *Id.* (quoting *Figueroa v. West*, 902 S.W.2d 701, 705 (Tex. App. 1995, no writ)).  The polices outlined in the Code of Conduct do not satisfy these requirements.  The Code neither mentions termination nor explicitly limits the conditions on which Westwood may discharge an employee.  Accordingly, the court concludes that the Code of Conduct does not alter the presumptive at-will nature of Martin's relationship and thus may not serve as the basis for her breach of contract claim.

Westwood also maintains that the court should decline to consider Martin's allegations in her summary judgment response that her offer letter, and not the Code of Conduct alone, constitutes an

employment contract. Even were the court to consider her allegations, the offer letter still fails to support her claim. The offer letter states:

> In the absence of a formal express contract of employment signed by you and the company's Chief Executive Officer, your employment with Westwood is at-will. This means that either you or Westwood may terminate your employment at any time, with or without reason, notice or cause. . . . The "at will" nature of your employment will continue throughout the entire duration of your employment with Westwood.

D. App. 150. Although Westwood argues that neither the offer letter nor the Code of Conduct is signed by Westwood's CEO, it has not adduced sufficient evidence to support this assertion. The court notes that Galloway signed Martin's offer letter in her capacity as Director of Education. Westwood states in its reply brief that Galloway is not Westwood's CEO, but this assertion, without supporting evidence, cannot serve as the basis for summary judgment. Even so, the offer letter does not purport to limit Westwood's ability to terminate Martin and accordingly does not, of itself, change the at-will status of her employment. Thus it cannot serve as a basis for Martin's breach of contract claim.

Because neither the Code of Conduct nor the offer letter alters the at-will nature of Martin's employment, she cannot recover for breach of contract based on her termination. Westwood's motion for summary judgment as to this claim is granted.

*     *     *

Westwood's motion for summary judgment is granted, and this action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

September 7, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE